UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
In the Matter of

SYNERGY BRANDS, INC.,

Debtor.
--------------------------------------------------------------X
KENNETH KIRSCHENBAUM, as Chapter 7
Trustee for the Estate of Synergy Brands, Inc.,

Plaintiff,

-against-

THOMAS BARBELLA, MAIR FAIBISH,
MITCHELL GERSTEIN, DAVID SHARIN,
THE CHARLES SCHWAB CORPORATION,
JP MORGAN CHASE & CO., JANNEY
MONTGOMERY SCOTT LLC and VANGUARD
FIDUCIARY TRUST COMPANY,

Defendants.
--------------------------------------------------------------X
STATE OF NEW YORK )
                   ) ss.:
COUNTY OF NASSAU   )

Chapter 7
Case No. 11-70412-dte

AFFIDAVIT OF SERVICE

Adv. Pro. No. 11-8908-dte

EILEEN WAGDA, being duly sworn, deposes and says:

I am not a party to the action, am over 18 years of age and reside at Levittown, New York.

On May 27, 2011, I served a true copy of the annexed **AMENDED ORDER SCHEDULING EXPEDITED HEARING ON TRUSTEE'S APPLICATION FOR AN EXTENSION OF THE PRELIMINARY INJUNCTION, SUPPORTING AFFIDAVIT, EXHIBITS and UNDERLYING COMPLAINT** in the following manner:

BY: **PRIORITY OVERNIGHT MAIL** by placing the same in a sealed envelope in an official depository of Fedex within the State of New York, addressed to the last known address of the addressee(s) listed below:

Heath Berger, Esq.
Steinberg, Fineo, Berger & Fischoff, P.C.
40 Crossways Park Drive
Woodbury, New York 11797

Mark J. Friedman, Esq.
The Law Offices of Mark J. Friedman, P.C.
66 Split Rock Road
Syosset, New York 11791

Thomas Barbella
20 Cherry Lane
Syosset, New York 11791

Mair Faibish
14 Sabrina Court
Dix Hills, New York 11746

Mitchell Gerstein
114 Hidden Ponds Circle
Smithtown, New York 11787

David Sharin
1754 Park Street
Atlantic Beach, New York 11509

The Charles Schwab Corporation
211 Main Street
San Francisco, CA 94105
Attention: Brandon Hemley, Esq.

JP Morgan Chase & Co.
National Subpoena Processing
7610 W. Washington Street
IN1-4054
Indianapolis, IN 46231-1335
Attention: Dennis Howard, Unit Lead

Janney Montgomery Scott, LLC
1801 Market Street - 8th Floor
Philadelphia, PA 19103
Attention: Patricia Casperson, Esq.
            Legal Dept.

Vanguard Fiduciary Trust Company
400 Devon Park Drive
Wayne, PA 19087-1815
Attention: Heidi Stam, Esq. - General Counsel
            Legal Dept. - V-26

Arent Fox, LLP
1675 Broadway
New York, New York 10019-5820
Attn: Jordana Renert, Esq.

United States Trustee
Long Island Federal Courthouse
560 Federal Plaza
Central Islip, New York 11722

_____
EILEEN WAGDA

Sworn to before me this
27th day of May, 2011

_____
NOTARY PUBLIC

TAL HIRSHBERG
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02HI6212693
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES 10/19/2013

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In the Matter of

SYNERGY BRANDS, INC.,

                        Debtor.
-----------------------------------------------------------------X
KENNETH KIRSCHENBAUM, as Chapter 7
Trustee for the Estate of Synergy Brands, Inc.,

                    Plaintiff,

-against-

THOMAS BARBELLA, MAIR FAIBISH,
MITCHELL GERSTEIN, DAVID SHARIN,
THE CHARLES SCHWAB CORPORATION,
JPMORGAN CHASE & CO., JANNEY
MONTGOMERY SCOTT LLC, & VANGUARD
FIDUCIARY TRUST COMPANY,

                    Defendants.
-----------------------------------------------------------------X

Chapter 7
Case No. 11-70412-dte

Adv. Pro. No. 11-08908-dte

### *AMENDED* ORDER SCHEDULING EXPEDITED HEARING ON TRUSTEE'S APPLICATION FOR AN EXTENSION OF THE PRELIMINARY INJUNCTION

       The Court having reviewed the affidavit of Kenneth Kirschenbaum, as Chapter 7 trustee

(the "Trustee") for the Estate of Synergy Brands, Inc. (the "Debtor") in support of his application

for a temporary restraining order and an extension of the existing preliminary injunction, the

supporting exhibits, and the Trustee's underlying complaint *(the "Application")*, and the Court

having found that *an expedited hearing is appropriate, it is hereby*

       **ORDERED,** that a hearing will be held on the *2nd* day of June, 2011, at *2:00 p.m.*, or as

soon thereafter as counsel can be heard, before the Honorable Dorothy T. Eisenberg, at the

United States Bankruptcy Court, Long Island Federal Courthouse, 290 Federal Plaza, Room 760,

Central Islip, New York 11722 to consider the Trustee's Application; and it is further

**ORDERED**, that notice of the hearing to consider the Trustee's *A*pplication shall be deemed good and sufficient if a copy of this Order, the underlying complaint, and the Trustee's *A*pplication *and the exhibits upon which it is based* are served by *overnight* mail on or before the *27th* day of *May*, 2011 upon counsel for each named defendant who has appeared in this proceeding, each named Defendant, and the United States Trustee; and it is further

**ORDERED**, that an affidavit of service evidencing service in accordance with this Order shall be filed by the Trustee on or before the *31st* day of *May*, 2011; and it is further

**ORDERED**, that answering papers, if any, shall be served by regular mail, electronic mail, or facsimile transmission upon Kirschenbaum & Kirschenbaum, P.C., attorneys for the Trustee, 200 Garden City Plaza, Suite 500, Garden City, New York 11530, Attention: Steven B. Sheinwald, Esq., and filed with the Court so as to actually be received on the *31st* day of *May*, 2011.



Dated: **Central Islip, New York**
      **May 27, 2011**

Dorothy Eisenberg

**Dorothy Eisenberg**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In the Matter of

SYNERGY BRANDS, INC.,

                        Debtor.
-----------------------------------------------------------X
KENNETH KIRSCHENBAUM, as Chapter 7
Trustee for the Estate of Synergy Brands, Inc.,

                        Plaintiff,

              -against-

THOMAS BARBELLA, MAIR FAIBISH,
MITCHELL GERSTEIN, DAVID SHARIN,
THE CHARLES SCHWAB CORPORATION,
JPMORGAN CHASE & CO., JANNEY
MONTGOMERY SCOTT LLC, & VANGUARD
FIDUCIARY TRUST COMPANY,

                        Defendants.
-----------------------------------------------------------X

Chapter 7
Case No. 11-70412-dte

Adv. Pro. No. 11-08908-dte

**AFFIDAVIT IN SUPPORT OF
TRUSTEE'S APPLICATION
FOR A TEMPORARY
RESTRAINING ORDER AND
AN EXTENSION OF THE
EXISTING PRELIMINARY
INJUNCTION PURSUANT TO
RULE 65 OF THE F.R.C.P.**

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF NASSAU    )

        KENNETH KIRSCHENBAUM, being duly sworn, deposes and says:

        1.      I am the duly appointed and acting bankruptcy trustee of Synergy Brands, Inc. (the

"Debtor"), and I am familiar with the facts and circumstances surrounding the administration of

the Debtor's employer-driven 401(k) retirement plan.  I submit this affidavit in support of the my

request, pursuant to Rule 65 of the Federal Rules of Civil Procedure, made applicable through

Rule 7065 of the Federal Rules of Bankruptcy Procedure, for a temporary restraining order and

for the extension of an existing preliminary injunction to enjoin the transfer or other disposition

of certain funds so as to preserve the status quo pending a final disposition of the underlying

adversary proceeding.

        2.      On January 28, 2011, the Debtor filed a voluntary petition (the "Petition") for relief

pursuant to Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). At the time of filing the Debtor was a publicly traded holding company that principally operated through wholly owned subsidiaries. On February 8, 2011 I was appointed Chapter 7 Successor Trustee (the "Trustee") for the Debtor's bankruptcy estate (the "Estate").

3. Ever since Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act in 2005, bankruptcy trustees have a duty to perform the obligations required of the administrator of any ERISA qualified employee benefit plan pursuant to 11 U.S.C. §704(a)(11). To that end, upon my preliminary investigation of the Debtor, I discovered that the Debtor had an ERISA qualified employee benefit plan entitled the Synergy Brands Inc. 401(k) Profit Sharing Plan (the "Plan"). As such, pursuant to Congressional mandate, I have the duty to administer and terminate the Plan for the benefit of the Plan participants. To this end, there are, and will continue to be, costs and expenses associated with the termination of the Plan that should be shared on a pro rata basis by every individual who was participating in the Plan as of the date of the filing of the Petition.

4. During the course of my investigation, I discovered that a select few Plan participants who constituted the executive leadership of the Debtor pre-petition, including Thomas Barbella, Mair Faibish, Mitchell Gerstein, and David Sharin (the "Officers"), withdrew all funds on deposit in their Plan accounts from the Plan Trust after the Debtor filed its bankruptcy petition. Specifically, each one of the Officers rolled over the Funds on deposit in their Plan accounts from the Plan Trust to retirement accounts each one had individually selected and established at other financial institutions. Such withdrawals aggregated to the sum of $396,377.37. Specifically, Mitchell Gerstein rolled over the sum of $86,460.91 to an account maintained at JP Morgan Chase & Co., Thomas Barbella rolled over the sum of $99,420.35 to an account maintained at The Charles Schwab Corporation, David Sharin rolled over the sum of $128,415.44 to an account maintained at Vanguard Fiduciary Trust Company, and Mair Faibish

rolled over the sum of $82,080.66 to an account maintained at Janney Montgomery Scott LLC (collectively, the "Rollover Accounts"). Copies of the issued checks showing the rollover of funds from the Plan Trust Fund to the individual financial institutions for the benefit of the Insiders are collectively annexed hereto as Exhibit A. Even though the Plan agreement provides that the plan administrator is to provide written authorization before any distribution is made, I never gave any such authorization for such distributions nor did I designate any third party to authorize such distributions. During December 2010, which was one month prior to the filing of the Petition, the Plan Trust Fund had an aggregate portfolio value of $744,888.80. As of March 14, 2011, the aggregate value of the Plan Trust Fund had decreased to the sum of $247,902.49, largely as a result of the withdrawals by the Insiders.

     5. According to Section 2.4 of the Plan Trust Agreement, the Plan Trustee shall pay benefits, fees, and/or dividends paid on Employer Securities, if any, from the Trust Fund only upon receipt of written direction from the Plan Administrator or its designee. The bankruptcy Trustee, in performing the duties of Plan administrator in accordance with 11 U.S.C. §704(a)(11) never authorized the Plan Trustee to make such distributions to any of the Defendants. According to Section 6.2 of the Trust Agreement, all fees and expenses incurred in the administration of the Trust Fund shall be paid from assets of the Trust Fund, unless paid by the Employer. Copies of the relevant provisions of the Plan Trust Agreement are annexed hereto as Exhibit B. Here, I expect to incur reasonable and necessary fees in connection with the termination of the Plan, which fees may be assessed against and paid by the Trust Fund. As such, I am seeking the equitable treatment of all Plan participants (as of the date of the filing of the Petition) in connection with the pro rata assessment of expenses associated with the termination of the Plan. In order to obtain that relief, I commenced an adversary proceeding against the Defendants. A copy of the Adversary Complaint is annexed hereto as Exhibit C. Prior to commencing the adversary proceeding, I made bona fide efforts to seek the restoration of

the Rollover Funds without the need for court intervention in an attempt to minimize legal fees and expenses. However, my efforts proved futile, thereby necessitating the commencement of the adversary proceeding.

6. After starting to perform the duties of the Plan administrator, I learned that there is an ongoing investigation by the United States Attorney's Office which was triggered pre-petition when the United States Department of Homeland Security became aware of systematic transfers of substantial amounts of funds (reported by the Debtor's criminal defense counsel to be as much as One Billion ($1,000,000,000.00) Dollars), between several of the Debtor's corporate subsidiaries within the United States and related corporate entities internationally, allegedly in an effort to make a false showing of commerce and to artificially inflate sales figures and other business activity that never occurred.

7. Based upon the Debtor's history and the facts and circumstances related to me, I had serious concerns with respect to the preservation of the status quo. While I had no personal knowledge as to the extent to which the Officers either knew or participated in the systematic transfers or in the deception of shareholders concerning the Debtor's fiscal health, it was clear to me that the Officers did have the knowledge, ability, and contacts to easily transfer the Funds out of the court's jurisdiction if no restraints were put in place. I believed a preliminary injunction was necessary to ensure that the Officers' could not transfer the Rollover Funds outside the reach of this Court and thereby avoid being subject to a pro rata assessment of costs and expenses relating to the termination of the Plan. As such, on April 20, 2011, I filed an application for an order scheduling a hearing on shortened notice to consider my request for a preliminary injunction prohibiting the defendants from withdrawing, transferring or otherwise disposing of the funds on deposit in the Rollover Accounts pending a final disposition of this adversary proceeding. The Court held a hearing on my application on April 28, 2011, at which time my counsel appeared in support of the application, and appearances were made on the record on

behalf of defendants David Sharin, Mair Faibish and Janney Montgomery Scott, LLC. Each party was given an opportunity to be heard by the Court, after which the Court granted my application to the extent that a preliminary injunction was granted for a period of thirty (30) days. A proposed order with notice of settlement was thereafter served and filed, and on May 10, 2011 the order granting the preliminary injunction for a period of thirty (30) days was entered, effective for the period April 28, 2011 through May 28, 2011. A copy of the Order is annexed hereto as Exhibit D.

8. At the hearing on April 28, 2011, counsel for defendants Mair Faibish and David Sharin asked the Court to grant them an extension of time to Answer the Complaint, which had to be served and filed on or before May 11, 2011 so as to provide them with an opportunity to negotiate a settlement of this adversary proceeding with me before incurring additional legal fees. The Court agreed and granted them an extension with the understanding that, if a settlement could not be reached, a new date for filing the answer would be fixed at the preliminary pre-trial conference, which is scheduled for June 14, 2011. However, to date, there has been no appearance in this proceeding by defendants Barbella and Gerstein, there has been no request for an extension of time to answer the complaint, no answer to the complaint has been filed, and they are both currently in default.

9. In the underlying adversary proceeding I am seeking the restoration of the Officer's Rollover Funds back into the Plan Trust Fund so that the remaining Plan participants share the costs of terminating the Plan with the Officers on a pro rata basis. In seeking this relief, I am concerned that once the Officers receive notice of my intention to seek an extension of the preliminary injunction, they may transfer the Rollover Funds outside this Court's jurisdiction or otherwise dissipate, transfer or hypothecate these funds. If that happens, the remaining Plan participants would undoubtedly suffer irreparable harm because they would be forced to bear the entire burden of paying all costs and expenses associated with the Plan termination without any

contribution from the Officers. If the Officers restore the Rollover Funds back to the Plan Trust Fund, the pool of available funds for the assessment of costs and expenses for Plan termination would more than double, thereby reducing the pro rata costs and expenses of the remaining participants by more than 50%. In sum, it would be inequitable to force the remaining Plan participants to be assessed in a sum needed to pay all the costs and expenses incurred in connection with the termination of the Plan, while the Officers of the Debtor are not assessed at all for such costs and expenses.

10. Because the existing preliminary injunction is only effective through May 28, 2011, I am requesting a temporary restraining order, effective May 28, 2011, and an order extending the preliminary injunction pursuant to Rule 65(b) of the Federal Rules of Civil Procedure pending the final disposition of the underlying adversary proceeding.

11. No prior application for the relief sought herein has been made to this or any other Court except as previously set forth herein.

WHEREFORE, it is respectfully requested that my application for a temporary restraining order and an extension of the existing preliminary injunction be granted together with such other and further relief as the Court deems just and proper.

_____
KENNETH KIRSCHENBAUM
Chapter 7 Bankruptcy Trustee

Sworn to before me this
26th day of May, 2011

_____
Notary Public

EILEEN WAGDA
Notary Public, State of New York
No. 30-4837171
Qualified in Nassau County
Commission Expires February 28, 2014

**EXHIBIT "A"**

| Request # | Plan No | Check No | Check Date | CK Clear Date | Check Amount | Payee Name |
|-----------|---------|----------|------------|---------------|--------------|------------|
| 31930 | 713050 | 0000004986 | 2/2/2011 | 2/14/2011 | 90,776.13 | BARBELLA, THOMAS J |

Posting Date:        2011-02-14
Sequence #:          8690472461
Account #:           ▓▓▓▓▓▓
Routing Transit:     02130937
Amount #:            $90776.13
Check/Serial #:      000000004986
Bank #:              802
Tran Code:           000000
IRD:                 0
ItemType:            P
BOFD:                000000000
Cost Center:         N/A
Teller Number:       N/A
Teller Seq Number:   N/A
Processing Date:     N/A

0444059

**DISBURSEMENT CHECK**

| ADP RETIREMENT SERVICES 1-866-713-6152 | Plan ID | Date of Check | Void After | 50-937 213 |
|---|---|---|---|---|
| | 713050 | 02/02/11 | 180 DAYS | 0000004986 |

NINETY THOUSAND SEVEN HUNDRED SEVENTY-SIX DOLLARS & 13/100

| DOLLARS | CENTS |
|---|---|
| ******90,776 | 13 |

PAY TO THE ORDER OF
CHARLES SCHWAB
ROLLOVER TTE/CUST FBO THOMAS J BARBELLA
20 CHERRY LANE
SYOSSET, NY 11791

DISBURSEMENT ACCOUNT / PAYABLE AT
JPMORGAN CHASE BANK, N.A.

SYRACUSE, NY 13206

DIRECT ROLLOVER   Acct ▓▓▓▓

WCELL

⑈"000000498 6⑈"

| Request # | Plan No | Check No | Check Date | CK Clear Date | Check Amount | Payee Name |
|-----------|---------|----------|------------|---------------|--------------|------------|
| 31931 | 713050 | 0000004928 | 2/1/2011 | 2/10/2011 | 86,460.91 | GERSTEIN, MITCHELL |

Page 1 of 1

Posting Date:        2011-02-10
Sequence #:          8390803017
Account #:           ▓▓▓▓▓▓▓▓
Routing Transit:     02130937
Amount #:            $86460.91
Check/Serial #:      000000004928
Bank #:              802
Tran Code:           000000
IRD:                 0
ItemType:            P
BOFD:                000000000
Cost Center:         N/A
Teller Number:       N/A
Teller Seq Number:   N/A
Processing Date:     N/A

0442907



DISBURSEMENT CHECK

ADP RETIREMENT SERVICES    Plan ID      Date of Check      Void After      50.932
1-866-713-6157                                                            213
                           713050       02/01/11           180 DAYS      0000004928

EIGHTY-SIX THOUSAND FOUR HUNDRED SIXTY DOLLARS & 91/100

| DOLLARS | CENTS |
|---------|-------|
| *****86,460 | 91 |

PAY TO THE ORDER OF
JP MORGAN CHASE BANK NA
ROLLOVER TTE/CUST F80 MITCHELL GERSTEIN
114 HIDDEN POND CIRCLE
SMITHTOWN, NY 11787

DISBURSEMENT ACCOUNT / PAYABLE AT
JPMORGAN CHASE BANK, N.A.

SYRACUSE, NY 13206

DIRECT ROLLOVER

⑈"000000￩928"

| Request # | Plan No | Check No | Check Date | CK Clear Date | Check Amount | Payee Name |
|---|---|---|---|---|---|---|
| 31932 | 713050 | 0000005362 | 2/10/2011 | 2/17/2011 | 82,080.66 | FAIBISH, MAIR |

Page 1 of 1

|  |  |
|---|---|
| Posting Date: | 2011-02-17 |
| Sequence #: | 1590331369 |
| Account #: | ▓▓▓▓▓▓▓▓ |
| Routing Transit: | 02130937 |
| Amount #: | $82080.66 |
| Check/Serial #: | 000000005362 |
| Bank #: | 802 |
| Tran Code: | 000000 |
| IRD: | 0 |
| ItemType: | P |
| BOFD: | 000000000 |
| Cost Center: | N/A |
| Teller Number: | N/A |
| Teller Seq Number: | N/A |
| Processing Date: | N/A |

0449265

**DISBURSEMENT CHECK**

ADP RETIREMENT SERVICES
1-800-713-6152

| Plan ID | Date of Check | Void After | 80-937 213 |
|---|---|---|---|
| 713050 | 02/10/11 | 180 DAYS | 0000005362 |

*EIGHTY-TWO THOUSAND EIGHTY DOLLARS & 66/100*

| DOLLARS | CENTS |
|---|---|
| *****82,080 | 66 |

PAY TO THE ORDER OF
JANNEY MONTGOMERY SCOTT
ROLLOVER TTE/CUST FBO MAIR FAIBISH
14 SABRINA COURT
DIX HILLS, NY 11746

*Roll*

DISBURSEMENT ACCOUNT / PAYABLE AT
JPMORGAN CHASE BANK, N.A.
SYRACUSE, NY 13206

DIRECT ROLLOVER

⑈*000000 5362*

FOR DEPOSIT
TO THE CREDIT OF
JANNEY MONTGOMERY SCOTT LLC

| Request # | Plan No | Check No | Check Date | CK Clear Date | Check Amount | Payee Name |
|---|---|---|---|---|---|---|
| 31933 | 713050 | 0000004987 | 2/2/2011 | 2/10/2011 | 128,415.44 | SHARIN, DAVID |

Posting Date:         2011-02-10
Sequence #:          8290508899
Account #:           ▓▓▓▓▓▓▓▓
Routing Transit:     02130937
Amount #:            $128415.44
Check/Serial #:      000000004987
Bank #:              802
Tran Code:           000000
IRD:                 0
ItemType:            P
BOFD:                000000000
Cost Center:         N/A
Teller Number:       N/A
Teller Seq Number:   N/A
Processing Date:     N/A



0444060

DISBURSEMENT CHECK

ADP RETIREMENT SERVICES    Plan ID    Date of Check    Void After    20-937
1-866-713-8162            713050      02/02/11        180 DAYS    0000004987

ONE HUNDRED TWENTY-EIGHT THOUSAND FOUR HUNDRED FIFTEEN DOLLARS & 44/100

DOLLARS | CENTS
****128,415 | 44

PAY TO THE ORDER OF
VFTC
ROLLOVER TTE/CUST FBO DAVID SHARIN
1754 PARK ST
ATLANTIC BEACH, NY 11509-1424

DISBURSEMENT ACCOUNT / PAYABLE AT
JPMORGAN CHASE BANK, N.A.
SYRACUSE, NY 13206

DIRECT ROLLOVER

⑈000000₄987⑈

PAY TO ORDER
OF WACHOVIA
ENDOR GUAR
VANGUARD GRO

**EXHIBIT "B"**

2.4 Distributions from Trust. The Trustee shall pay benefits, fees and/or dividends paid on Employer Securities, if any, from the Trust Fund only upon receipt of written direction from the Plan Administrator or its designee.

The Plan Administrator shall ensure that its designee provides direction to the Trustee based on the written direction it receives from the Plan Administrator or a third party administrator, if authorized by the Plan Administrator. The Trustee shall rely on directions from the Plan Administrator or its designee and shall be under no duty to ascertain whether the directions are in accordance with the Plan or applicable law.

In the event the Plan Administrator's designee is to provide direction to the Trustee, upon receipt of a written notice from the Plan Administrator or a third party administrator, if authorized by the Plan Administrator, certifying that an amount is payable to a Participant or other person under the Plan, the Plan's designee will give direction to the Trustee who will promptly pay such amount in accordance with the notice and will be fully protected in so doing. The Plan Administrator's notice will include all information necessary to enable the Plan's designee to direct the Trustee to make such payment, including income tax withholding instructions and the account or accounts or investment fund or funds to be charged with such payments. The Plan Administrator's giving of a payment notice constitutes a certification from the Plan Administrator to the Trustee and the Plan's designee that such payment is in accordance with the Plan, that the Plan Administrator has provided the Participant any and all notices and explanations required by law and that the Plan Administrator has properly obtained any waivers or consents of the Participant, the Participant's spouse or other distributee required by law. The Trustee will have no responsibility for the application of any payment by the recipient, for determining the rights or benefits of any person in the Trust or under the Plan, for the administration of the Plan, or for the adequacy of the Trust to meet all liabilities arising under the Plan. The Trustee shall have no responsibility for calculating or determining any amount to be distributed to a Participant and/or for compliance with any applicable requirements for distribution.

## ARTICLE III
## INVESTMENT DIRECTION

3.1 Directed Trustee. The Trustee shall act only as a directed Trustee and shall exercise no discretion over the investment or distribution of the Trust Fund. The Trustee shall invest and reinvest the Trust Fund, without distinction between principal and income, in accordance with investment directions, as provided in this Article. The Trustee will have no responsibility to review or question such instructions or directions and will have no responsibility or liability for compliance with any applicable requirements concerning Plan investments under the Plan or ERISA or for any loss or diminution in value which results from the choice of investments for the Trust Fund. Whenever the Trustee is permitted or required to act upon instructions or directions of the Recordkeeper, the Named Fiduciary, Plan Administrator, or Participant, the Trustee will have no responsibility or liability for any action taken or omitted by the Trustee in reliance thereon.

or other liabilities in connection with the performance of this Agreement, except such as may arise from its own negligent action, negligent failure to act or willful misconduct, any property at any time held for the Trust Fund shall be security therefor and the Trustee shall be entitled to collect from the Trust Fund sufficient cash for reimbursement, and if such cash is insufficient, dispose of the assets of the Trust Fund to the extent necessary to obtain reimbursement. If the Recordkeeper provides disbursement services hereunder, the Employer hereby authorizes the Recordkeeper to retain income or interest on disbursement balances in lieu of the Trustee. To the extent the Trustee advances funds to the Trust for disbursements or to effect the settlement of purchase transactions, the Trustee shall be entitled to collect from the Trust Fund either (i) with respect to domestic assets, an amount equal to what would have been earned on the sums advanced (an amount approximating the "federal funds" interest rate), or (ii) with respect to non-domestic assets, the rate applicable to the appropriate foreign market.

6.2     **Fees.** All fees and expenses actually and properly incurred in the administration of the Trust Fund shall be paid from the assets of the Trust Fund, unless paid by the Employer.

6.3     **Method of Payment.** In order to provide for payment of any fees and expenses not paid directly by the Employer as provided in Section 6.2, the Trustee in its discretion may partially or fully liquidate any asset in the Trust Fund and shall not be liable for any loss occasioned thereby. Any compensation of the Trustee which is not paid from the Trust for whatever reason will be the responsibility of the Employer. Any payment out of the Trust Fund of any of the fees authorized in this Article VI shall be deemed to be for defraying the reasonable expenses of administering the Plan.

6.4     **Taxes.**

(a)     All real and personal property taxes, income taxes and other taxes of any and all kinds whatsoever upon or in respect of the Trust Fund hereby created or any money, income or property forming a part thereof, shall be paid directly from the assets of the Trust Fund following advance written notice to the Employer.

(b)     The Trustee may assume that any taxes assessed on or in respect of the Trust Fund are lawfully assessed unless the Plan Administrator or the Employer shall in writing advise the Trustee that in the opinion of counsel for the Employer such taxes are not lawfully assessed. In the event that the Plan Administrator or the Employer shall so advise the Trustee, the Trustee, if so requested by the Plan Administrator and suitable provision for indemnity of the Trustee having been made, shall contest the validity of such taxes in any manner deemed appropriate by the Plan Administrator, the Employer or counsel for the Employer. The word "taxes" in this Section 6.4 shall be deemed to include any interest or penalties that may be levied or imposed in respect to any taxes assessed.

(c)     In order to provide for payment of any taxes as provided in Section 6.4, the Trustee in its discretion may partially or fully liquidate any asset in the Trust

**EXHIBIT "C"**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In the Matter of

SYNERGY BRANDS, INC.,                                        Chapter 7
                                                            Case No. 11-70412-dte

                                Debtor.
-----------------------------------------------------------X      **COMPLAINT**
KENNETH KIRSCHENBAUM, as Chapter 7
Trustee for the Estate of Synergy Brands, Inc.,

                                Plaintiff,

                -against-                                     Adv. Pro. No.

THOMAS BARBELLA, MAIR FAIBISH,
MITCHELL GERSTEIN, DAVID SHARIN,
THE CHARLES SCHWAB CORPORATION,
JPMORGAN CHASE & CO., JANNEY
MONTGOMERY SCOTT LLC, & VANGUARD
FIDUCIARY TRUST COMPANY,

                                Defendants.
-----------------------------------------------------------X

Plaintiff, by his attorneys, Kirschenbaum & Kirschenbaum, P.C., as and for his complaint

herein alleges:

## THE PARTIES

1. The Plaintiff is the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the

estate (the "Estate") of Synergy Brands, Inc. (the "Debtor").

2. The Defendant Thomas Barbella ("Barbella") is an individual who, for a period of time

prior to the filing of the Debtor's bankruptcy petition, served as an Executive Vice President of the

Debtor.

3. The Defendant Mair Faibish ("Faibish") is an individual who, for a period of time prior

to the filing of the Debtor's bankruptcy petition, served as the Chief Executive Officer of the

Debtor.

4. The Defendant Mitchell Gerstein ("Gerstein") is an individual who, for a period of time prior to the filing of the Debtor's bankruptcy petition, served as the Chief Financial Officer of the Debtor.

5. The Defendant David Sharin ("Sharin" who, together with Barbella, Faibish, and Gerstein shall collectively be referred to as the "Insiders") is an individual who, for a period of time prior to the filing of the Debtor's bankruptcy petition, served as an Executive Vice President of the Debtor.

6. The Defendant The Charles Schwab Corporation ("Schwab") is a provider of investment services, including retirement and benefit plan services.

7. The Defendant JPMorgan Chase & Co. ("JP Morgan") is a financial services firm that provides retirement plan services.

8. The Defendant Janney Montgomery Scott LLC ("Janney") is a full-service financial services firm that provides investment services for individuals and corporations, including retirement plan services.

9. The Defendant Vanguard Fiduciary Trust Company ("Vanguard" who, together with Schwab, JP Morgan and Janney shall collectively be referred to as the "Banks") is an investment management company providing retirement plan services to its various customers.

## JURISDICTION AND VENUE

10. On January 28, 2011, the Debtor filed a voluntary petition (the "Petition") for relief pursuant to Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

11. This adversary proceeding arises out of and relates to the Chapter 7 case of the Debtor on the docket of this Court.

12. The statutory predicates upon which this adversary proceeding is based are 11 U.S.C. §§ 105(a), 704(a)(11) and The Employee Retirement Income Security Act ("ERISA"), 29

U.S.C. §§ 1104, 1106 in that the proceeding seeks to: (a) restore to the Debtor's employer sponsored 401(k) Profit Sharing Plan funds distributed from the Profit Sharing Plan to the Insiders post-petition, amounting to the total sum of $396,377.36; (b) personally assess Gerstein for the aggregate pro rata share of expenses associated with the termination of the 401(k) Profit Sharing Plan that would be assessed by the Trustee against all the Insiders had they not received the post-petition distributions; (c) enjoin the Banks from making any distributions from the Insiders' custodial accounts held for the benefit of the Insiders unless directed to do so pursuant to Court Order; and (d) for such other and further relief as the Court deems just and proper.

13. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 & 1334.

14. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B).

15. This Court is the proper venue for this adversary proceeding pursuant to 28 U.S.C. § 1408.

## GENERAL ALLEGATIONS

16. Prior to the filing of the Petition, the Debtor sponsored an ERISA qualified retirement plan for the benefit of its employees entitled the Synergy Brands Inc. 401(k) Profit Sharing Plan (the "Plan").

17. Prior to the filing of the Petition, Gerstein served as the designated plan administrator of the Plan.

18. Gerstein is a fiduciary of the Plan as that term is defined by ERISA, 29 U.S.C. § 1002(21).

19. The Insiders, collectively and individually, constitute insiders of the Debtor as that term is defined by 11 U.S.C. § 101(31).

20. During December 2010, the Plan had an aggregate portfolio value (the "Trust Fund") of $744,888.80.

21. On January 31, 2011, three days after the Debtor filed its bankruptcy petition, Gerstein requested and obtained a distribution of all funds in his Plan account in the amount of $86,460.91.

22. Upon information and belief, Gerstein rolled-over his post-petition distribution in the amount of $86,460.91 to an IRA account with JP Morgan.

23. On February 1, 2011, four days after the Debtor filed its bankruptcy petition, Sharin requested and obtained a distribution of all funds in his Plan account in the amount of $128,415.44.

24. Upon information and belief, Sharin rolled-over his post-petition distribution in the amount of $128,415.44 to an IRA account with Vanguard.

25. On February 1, 2011, four days after the Debtor filed its bankruptcy petition, Barbella requested and obtained a distribution of all funds in his Plan account in the amount of $99,420.35.

26. Upon information and belief, Barbella rolled-over his post-petition distribution in the amount of $99,420.35 to an IRA account with Schwab.

27. On February 9, 2011, twelve days after the Debtor filed its bankruptcy petition, Faibish requested and obtained a distribution of all funds in his Plan account in the amount of $82,080.66.

28. Upon information and belief, Faibish rolled-over his post-petition distribution in the amount of $82,080.66 to an IRA account with Janney.

29. In total, the Insiders received distributions from their Plan accounts in the aggregate sum of $396,377.36 after the filing of the Petition (the "Post-Petition Distributions").

30. As of March 14, 2011, there were a total of twelve active participants remaining in the Plan.

31. As of March 14, 2011, the total value of the Trust Fund remaining in the Plan portfolio aggregated to $247,902.49.

32. In accordance with 11 U.S.C. § 704(a)(11), the Trustee is required to continue to perform the duties required of the plan administrator as of the date of the filing of the petition.

33. In order to avoid disqualification of the Plan by the IRS, the Plan must continue to be administered.

34. In accordance with Section 2.4 of the Plan Trust Agreement, the Trustee shall pay benefits, fees, and/or dividends paid on Employer Securities, if any, from the Trust Fund only upon receipt of written direction from the Plan Administrator or its designee.

35. In accordance with Section 6.2 of the Plan Trust Agreement, all fees and expenses incurred in the administration of the Trust Fund shall be paid from the assets of the Trust Fund, unless paid by the Employer.

36. The bankruptcy Trustee did not provide written direction to the Plan trustee to make any distributions to the Insiders after the filing of the Petition.

37. The bankruptcy Trustee did not provide written direction to any designee to provide direction to the Plan trustee to make any distributions from the Trust Fund post-petition.

38. The Insiders, who received distribution of their Plan funds post-petition, have diminished the Trust Fund, thereby substantially increasing the pro rata costs of the remaining Plan participants in connection with the payment of fees and expenses which will actually and properly be incurred in connection with the termination of the Plan and the distribution of the Trust Fund post-petition.

39. A restoration to the Trust Fund of the Post-Petition Distributions received by the Insiders will permit an equitable pro rata assessment against all plan participants as of the date of filing of the Petition to the extent necessary to pay all fees and expenses actually and necessarily incurred in connection with the termination of the Plan and the distribution of the Trust Fund.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST THE INSIDERS FOR THE RESTORATION OF THE POST-PETITION DISTRIBUTIONS UNDER 11 U.S.C. § 105(a)

40. As insiders and former officers of the Debtor, the Insiders knew or should have known of the bankruptcy petition filing and its consequences with respect to the termination of the Plan post-petition.

41. As a consequence of the Insiders receiving distribution of their Plan funds post-petition, the Trustee is unable to assess their Plan funds pro rata with the remaining participants, leaving the remaining participants with the burden of paying the total costs and expenses incurred in connection with the termination of the Plan.

42. As a matter of equity, the Insiders should share on a pro rata basis in the payment of the costs and expenses that will be incurred in connection with the Plan termination.

43. By virtue of the foregoing, and pursuant to 11 U.S.C. § 105(a), the Court should apply equitable principles in directing the restoration of the Post-Petition Distributions to the Plan by the Insiders, thereby causing the Insiders to share, on a pro rata basis, in the payment of the costs and expenses incurred in terminating the Plan.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST GERSTEIN FOR THE RECOVERY OF THE POST-PETITION DISTRIBUTIONS UNDER ERISA, 29 U.S.C. § 1104

44. As the pre-petition plan administrator and a fiduciary of the Plan, Gerstein had a duty to exercise a prudent man standard of care with respect to the Plan participants in accordance with ERISA, 29 U.S.C. § 1104(a).

45. By allowing the Post-Petition Distributions to the Insiders, Gerstein effectively obligated the remaining Plan participants to pay the total costs and expenses of terminating the Plan, with no contribution from the Insiders.

46. By virtue of the foregoing, Gerstein should be directed to restore to the Trust Fund a sum equal to the amount the Insiders would have been assessed for the payment of administrative

costs and expenses had the Insiders not received the Post-Petition Distributions, thereby allowing

the remaining participants to be assessed for the costs and expenses incurred in connection with the

termination of the Plan to the same extent as if the Post-Petition Distributions to the Insiders were

not made.

<u>AS AND FOR A THIRD CAUSE OF ACTION AGAINST GERSTEIN FOR THE
RESTORATION OF POST-PETITION DISTRIBUTIONS BECAUSE DISTRIBUTIONS
CONSTITUTED PROHIBITED TRANSACTIONS UNDER ERISA, 29 U.S.C. § 1106</u>

47. As plan administrator, Gerstein had an obligation to place a freeze on Trust Fund

distributions upon the filing of the Debtor's bankruptcy Petition.

48. Following the filing of the Petition, Gerstein permitted the Post-Petition Distributions

for the benefit of himself and the Insiders to the detriment of the remaining Plan participants.

49. The Post-Petition Distributions constituted prohibited transactions under ERISA, 29

U.S.C. § 1106.

50. By virtue of the foregoing, Gerstein should be directed to restore to the Trust Fund a

sum equal to the amount the Insiders would have been assessed for the payment of administrative

fees and expenses had the Insiders not received the Post-Petition Distributions, thereby allowing the

remaining participants to be assessed for the costs and expenses incurred in connection with the

termination of the Plan to the same extent as if the Post-Petition Distributions to the Insiders were

not made.

<u>AS AND FOR A FOURTH CAUSE OF ACTION AGAINST GERSTEIN AS PLAN
ADMINISTRATOR SEEKING THE RESTORATION OF FUNDS SUFFICIENT TO
COVER THE PRO RATA ASSESMENT OF EXPENSES OF ALL INSIDERS</u>

51. As the pre-petition plan administrator, Gerstein had a higher burden of care to the Plan

than the other Insiders.

52. Based upon the Plan Agreement, Gerstein knew, or should have known, that there would be costs and expenses incurred in connection with the termination of the Plan which the Plan participants would be required to pay on a pro rata basis from the Trust Fund accounts.

53. Gerstein breached his fiduciary duty with respect to the Plan and the Plan participants by failing to freeze disbursements from the Plan upon the filing of the Petition.

54. Gerstein breached his fiduciary duty with respect to the Plan and the Plan participants by seeking and obtaining his Post-Petition Distribution, leaving the few remaining Plan participants to bear the total costs of terminating the Plan.

55. Gerstein breached his fiduciary duty with respect to the Plan and the Plan participants by allowing the other Insiders to receive their Post-Petition Distributions, leaving the few remaining Plan participants to bear the total costs of terminating the Plan.

56. Pursuant to 11 U.S.C. § 105(a), the Court should apply its equitable authority in assessing Gerstein personally for the pro rata share of expenses which would have been assessed against all Insiders in connection with the termination of the Plan had they not received the Post-Petition Distributions to the extent that any of the other Insider(s) fails to restore his Post-Petition Distribution to the Plan.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST JP MORGAN ENJOINING IT FROM MAKING ANY DISTRIBUTION FROM GERSTEIN'S ACCOUNT PENDING THE RESTORATION OF SUCH FUNDS TO THE PLAN

57. Upon information and belief, Gerstein's Post-Petition Distribution in the amount of $86,460.91 was rolled-over to a custodial account maintained at JP Morgan.

58. If JP Morgan distributes such funds to Gerstein or a third-party, the Trustee's underlying request for relief in the restoration of such funds back to the Trust Fund of the Plan will be rendered moot, thereby causing irreparable harm to the remaining Plan participants.

59. As such, pursuant to 11 U.S.C. § 105(a), the Court should apply its equitable authority to enjoin JP Morgan from making any distribution from Gerstein's custodial account up to the sum of $86,460.91 pending a final, non-appealable Order of the Court either restoring such funds to the Trust Fund of the Plan or denying the restoration of such funds to the Trust Fund.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST VANGUARD ENJOINING IT FROM MAKING ANY DISTRIBUTION FROM SHARIN'S ACCOUNT PENDING THE RESTORATION OF SUCH FUNDS TO THE PLAN

60. Upon information and belief, Sharin's Post-Petition Distribution in the amount of $128,415.44 was rolled-over to a custodial account maintained at Vanguard.

61. If Vanguard distributes such funds to Sharin or a third-party, the Trustee's underlying request for relief in the restoration of such funds back to the Trust Fund of the Plan will be rendered moot, thereby causing irreparable harm to the remaining Plan participants.

62. As such, pursuant to 11 U.S.C. § 105(a), the Court should apply its equitable authority to enjoin Vanguard from making any distribution from Sharin's custodial account up to the sum of $128,415.44 pending a final, non-appealable Order of the Court either restoring such funds to the Trust Fund of the Plan or denying the restoration of such funds to the Trust Fund.

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST SCHWAB ENJOINING IT FROM MAKING ANY DISTRIBUTION FROM BARBELLA'S ACCOUNT PENDING THE RESTORATION OF SUCH FUNDS TO THE PLAN

63. Upon information and belief, Barbella's Post-Petition Distribution in the amount of $99,420.35 was rolled-over to a custodial account maintained at Schwab.

64. If Schwab distributes such funds to Barbella or a third-party, the Trustee's underlying request for relief in the restoration of such funds back to the Trust Fund of the Plan will be rendered moot, thereby causing irreparable harm to the remaining Plan participants.

65. As such, pursuant to 11 U.S.C. § 105(a), the Court should apply its equitable authority to enjoin Schwab from making any distribution from Gerstein's custodial account up to the sum of

$99,420.35 pending a final, non-appealable Order of the Court either restoring such funds to the Trust Fund of the Plan or denying the restoration of such funds to the Trust Fund.

## AS AND FOR A EIGHTH CAUSE OF ACTION AGAINST JANNEY ENJOINING IT FROM MAKING ANY DISTRIBUTION FROM FAIBISH'S ACCOUNT PENDING THE RESTORATION OF SUCH FUNDS TO THE PLAN

66. Upon information and belief, Faibish's Post-Petition Distribution in the amount of $82,080.66 was rolled-over to a custodial account maintained at Janney.

67. If Janney distributes such funds to Faibish or a third-party, the Trustee's underlying request for relief in the restoration of such funds back to the Trust Fund of the Plan will be rendered moot, thereby causing irreparable harm to the remaining Plan participants.

68. As such, pursuant to 11 U.S.C. § 105(a), the Court should apply its equitable authority to enjoin Janney from making any distribution from Gerstein's custodial account up to the sum of $82,080.66 pending a final, non-appealable Order of the Court either restoring such funds to the Trust Fund of the Plan or denying the restoration of such funds to the Trust Fund.

## RELIEF REQUESTED

WHEREFORE, the Trustee respectfully requests judgment against the Defendants:

(a) directing the Insiders to restore to the Debtor's employer sponsored 401(k) Profit Sharing Plan those funds distributed from the Profit Sharing Plan to the Insiders post-petition, amounting to the total sum of $396,377.36;

(b) personally assessing Gerstein for the aggregate pro rata share of expenses associated with the termination of the 401(k) Profit Sharing Plan that would be assessed by the Trustee against all the Insiders had they not received the Post-Petition Distributions to the extent that any of the Insider(s) fails to restore his Post-Petition Distribution to the Profit Sharing Plan;

(c) enjoining the Banks from making any distributions from the Insiders' custodial accounts held for the benefit of the Insiders unless directed to do so pursuant to Court Order; and

(d) for such other and further relief as the Court deems just and proper.

Dated: Garden City, New York        KIRSCHENBAUM & KIRSCHENBAUM, P.C.
      March 28, 2011        Attorneys for the Trustee

By: *Fletcher W. Strong*
      Fletcher W. Strong
      Kirschenbaum & Kirschenbaum, P.C.
      200 Garden City Plaza
      Garden City, New York 11530
      (516) 747-6700

**EXHIBIT "D"**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
In the Matter of

SYNERGY BRANDS, INC.,

                                    Debtor.
--------------------------------------------------------------X
KENNETH KIRSCHENBAUM, as Chapter 7
Trustee for the Estate of Synergy Brands, Inc.,

                                    Plaintiff,

                 -against-

THOMAS BARBELLA, MAIR FAIBISH,
MITCHELL GERSTEIN, DAVID SHARIN,
THE CHARLES SCHWAB CORPORATION,
JP MORGAN CHASE & CO., JANNEY
MONTGOMERY SCOTT LLC and VANGUARD
FIDUCIARY TRUST COMPANY,

                                    Defendants.
--------------------------------------------------------------X

Chapter 7
Case No. 11-70412-dte

**ORDER GRANTING
PRELIMINARY INJUNCTION**


Adv. Pro. No. 11-8908-dte

       Kenneth Kirschenbaum, as Chapter 7 Trustee (the "Trustee") for the Estate of Synergy

Brands, Inc. (The "Debtor"), having filed an application (the "Application") for a preliminary

injunction, and the Trustee having further requested that the Court schedule a hearing on the

Application on an expedited basis, and the Court having reviewed the Trustee's affidavit in

support of the Application, the supporting exhibits, and the Trustee's underlying complaint, and

the Court having entered an Order scheduling a hearing on an expedited basis to consider the

Trustee's Application, and the matter having duly come on to be heard before the Honorable

Dorothy Eisenberg, United States Bankruptcy Judge, on April 28, 2011, and Steven B Sheinwald,

Esq. having appeared on behalf of the Trustee in support of the Application, and Mark Friedman,

Esq. having appeared on behalf of defendant David Sharin, and Brian Schechter, Esq. having

appeared on behalf of defendant Mair Faibish, and Patricia Casperson, Esq. having appeared on behalf of defendant Janney Montgomery Scott, LLC, and the Trustee's counsel having represented to the Court that all defendants were served with the Order scheduling a hearing on the Trustee's Application on shortened notice together with all documents upon which the Order scheduling the hearing was issued, and the Court having considered the Trustee's Application together with its supporting documents, the underlying complaint, the opposition to the Trustee's Application filed by The Law Offices of Mark J. Friedman, P.C. on behalf of defendant David Sharin, and the affirmation of Heath Berger, Esq., filed on behalf of defendant Mair Faibish, in opposition to the Trustee's Application, and all parties appearing before the Court having been given an opportunity to be heard with respect to the Trustee's Application, and the Court having found a basis for granting the relief requested, it is hereby

ORDERED, that the Trustee's Application for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, made applicable through Rule 7065 of the Federal Rules of Bankruptcy Procedure, is granted for a period of 30 days, and the preliminary injunction (the "Injunction") shall be effective for the period commencing April 28, 2011 through and including May 28, 2011 (the "Effective Period") without prejudice to the rights of any party to seek a modification of the terms of the Injunction; and it is further

ORDERED, that, during the Effective Period, Defendant Thomas Barbella ("Barbella") is prohibited from spending, distributing, disposing, sequestering, or in any other way transferring those retirement funds in the sum of $99,420.35 that were originally rolled over from the Debtor's employer sponsored retirement plan entitled the Synergy Brands Inc. 401(k) Profit Sharing Plan (the "Plan") to the Defendant Charles Schwab; and it is further

ORDERED, that, during the Effective Period, Defendant Charles Schwab ("Scwhab") is

prohibited from transferring, distributing, or otherwise disposing of Barbella's retirement funds in the sum of $99,420.35 rolled over from the Plan and/or Barbella to Schwab; and it is further

ORDERED, that, during the Effective Period, Defendant Mair Faibish ("Faibish") is prohibited from spending, distributing, disposing, sequestering, or in any other way transferring those retirement funds in the sum of $82,080.66 that were originally rolled over from the Plan to the Defendant Janney Montgomery Scott LLC; and it is further

ORDERED, that, during the Effective Period, Defendant Janney Montgomory Scott LLC ("Janney") is prohibited from transferring, distributing, or otherwise disposing of Faibish's retirement funds in the sum of $82,080.66 rolled over from the Plan and/or Faibish to Janney; and it is further

ORDERED, that, during the Effective Period, Defendant Mitchell Gerstein ("Gerstein") is prohibited from spending, distributing, disposing, sequestering, or in any other way transferring those retirement funds in the sum of $86,460.91 that were originally rolled over from the Plan to the Defendant JPMorgan Chase & Co.; and it is further

ORDERED, that, during the Effective Period, Defendant JPMorgan Chase & Co. ("JP Morgan") is prohibited from transferring, distributing, or otherwise disposing of Gerstein's retirement funds in the sum of $86,460.91 rolled over from the Plan and/or Gerstein to JP Morgan; and it is further

ORDERED, that, during the Effective Period, Defendant David Sharin ("Sharin") is prohibited from spending, distributing, disposing, sequestering, or in any other way transferring those retirement funds in the sum of $128,415.44 that were originally rolled over from the Plan to the Defendant Vanguard Fiduciary Trust Company; and it is further

ORDERED, that, during the Effective Period, Defendant Vanguard Fiduciary Trust

Company ("Vanguard") is prohibited from transferring, distributing, or otherwise disposing of Sharin's retirement funds in the sum of $128,415.44 rolled over from the Plan and/or Sharin to Vanguard; and it is further

       ORDERED, that, unless otherwise extended by the Court, this Order shall expire at 12:00 a.m. on the 29th day of April, 2011.



Dated: Central Islip, New York
     May 10, 2011

Dorothy Eisenberg
United States Bankruptcy Judge